NO. 07-08-0345-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 2, 2010
_____

IN THE MATTER OF A. W. B., A CHILD
_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A 2322-0709; HONORABLE ROBERT W. KINKAID, JR., JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.


**OPINION**


Appellant, A.W.B., appeals an Order of Adjudication that found that he had engaged in delinquent conduct and an Order of Disposition that ordered that he be committed to the Texas Youth Commission for an indeterminate period not to exceed his 19th birthday. We affirm the adjudication order in part, vacate the adjudication order in part, and affirm the disposition order.


Background


On September 10, 2007, Jane Doe, a four year old, was taken by her grandmother, Gwen, to gymnastics class at Ready, Set, Go, in Plainview, Texas. Gwen left Jane Doe with A.W.B., a 16 year old, because Gwen thought that A.W.B. worked for

Ready, Set, Go and Jane Doe appeared to know A.W.B. As Gwen returned to her car, she noticed A.W.B. and Jane Doe walking up a stairway that did not lead to Jane Doe's classroom. Gwen followed the two to an upstairs room and, upon entering the room, Gwen saw Jane Doe standing in front of A.W.B. with her face near A.W.B.'s crotch. A.W.B. noticed Gwen, jumped, and pulled up his pants. Gwen confronted A.W.B.'s mother, who worked for Ready, Set, Go, regarding what she had seen and then immediately took Jane Doe to her mother, Audra. When Gwen arrived, Audra heard Jane Doe "screaming and crying," so she ran over to the vehicle to see what was wrong. Audra attempted to console Jane Doe and, eventually, she asked Jane Doe what had happened. Jane Doe told her that A.W.B. "put his private in her mouth." Following this report, Audra called the police about the incident.

As part of the police investigation of the report, A.W.B. gave a statement. In this statement, A.W.B. admitted that he pulled his pants down and showed Jane Doe his "front." However, A.W.B. claimed that he "never put a hand on her at all." This statement was admitted into evidence during the subsequent adjudication hearing.

The State filed a Petition alleging that A.W.B. had engaged in delinquent conduct. By this petition, the State alleged that A.W.B. had (1) committed aggravated sexual assault of a child by intentionally or knowingly causing the penetration of Jane Doe's mouth by A.W.B.'s sexual organ, (2) committed attempted aggravated sexual assault on Jane Doe, (3) caused Jane Doe to touch A.W.B.'s genitals, and (4)

2

intentionally and knowingly exposed his genitals to Jane Doe. All four of these allegations relate to the single incident occurring on September 10, 2007.

Prior to the adjudication hearing, A.W.B.'s counsel filed a motion for psychological evaluation of A.W.B. The motion requested a psychological examination pursuant to section 51.20 of the Texas Family Code because A.W.B.'s counsel believed that A.W.B. "has or may have significant limitations in his ability to form the requisite intent to commit the alleged delinquent conduct . . ." alleged by the State. See TEX. FAM. CODE ANN. § 51.20 (Vernon 2008).[1] This motion was granted by the trial court and Dr. Richard Wall was appointed to conduct a psychological examination of A.W.B. Dr. Wall performed this evaluation on October 1, 2007.

During the adjudication hearing, Gwen testified regarding what she observed at Ready, Set, Go on September 10, 2007. Over A.W.B.'s hearsay objection, Audra testified that Jane Doe told her that A.W.B. "had put his private in her mouth." Dr. Wall also testified regarding his examination of A.W.B. However, the trial court sustained the State's relevancy objection to the report Dr. Wall prepared in conjunction with his psychological examination of A.W.B. At the close of the adjudication hearing, the trial court found each of the State's four allegations true and proceeded to disposition. At the close of the disposition hearing, the trial court ordered A.W.B. committed to the Texas Youth Commission for an indeterminate period not to exceed A.W.B.'s 19th birthday. A.W.B. timely filed notice of appeal of both the adjudication and disposition.

---

[1] Further reference to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

By his appeal, A.W.B. presents four issues. By his first issue, A.W.B. contends that the trial court abused its discretion by hearing outcry witness testimony without following the procedures of article 38.072 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2009). By his second issue, A.W.B. contends that the trial court abused its discretion by failing to conduct a hearing regarding A.W.B.'s lack of responsibility for his conduct due to mental illness or mental retardation. By his third issue, A.W.B. contends that the evidence is legally and factually insufficient to justify commitment of A.W.B. to the Texas Youth Commission. By his fourth issue, A.W.B. contends that the trial court's sentence is an unconstitutional violation of double jeopardy. We will address A.W.B.'s issues in logical rather than sequential order.

## Double Jeopardy

Because our analysis of A.W.B.'s fourth issue will narrow the focus of the appeal, we will address it first. As indicated above, the State alleged that A.W.B. had engaged in delinquent conduct by committing four offenses, all arising from the same September 10, 2007, incident.

The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against both successive punishments and successive prosecutions for the same offense. United States v. Dixon, 509 U.S. 688, 695-96, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Greater inclusive and lesser included offenses can be the same offense for jeopardy purposes. Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221,

4

53 L.Ed.2d 187 (1977). Thus, where the evidence shows that a defendant committed only one act, but that act could be used to prove both greater inclusive and lesser included offenses, the defendant cannot be convicted of more than one of these offenses. Ochoa v. State, 982 S.W.2d 904, 908 (Tex.Crim.App. 1998).

It is clear from the facts of this case that each of the alleged offenses arose from the same incident. Further, some of the offenses alleged are greater inclusive or lesser included offenses of others. When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. Bigon v. State, 252 S.W.3d 360, 372-73 (Tex.Crim.App. 2008); Ochoa, 982 S.W.2d at 908.

Thus, we will constrain our review of A.W.B.'s remaining issues to how they impact the trial court's finding that A.W.B. committed aggravated sexual assault of a child by penetration, the most serious offense alleged. See TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (Vernon Supp. 2009). Because we will affirm the adjudication of this most serious offense, we will vacate the adjudication of the offenses found in counts two, three, and four of the State's petition.[2]

Outcry Testimony

By his first issue, A.W.B. contends that the trial court abused its discretion by allowing Audra to testify as to Jane Doe's outcry statement without the State satisfying

---

[2] The State agrees that, when double jeopardy principles are applied to this case, the Court should reform the adjudication order to delete the adjudications of true to the second, third, and fourth counts.

the requirements of section 54.031 of the Texas Family Code. See § 54.031. A.W.B.'s argument focuses on the trial court's failure to hold a hearing on whether the outcry testimony of Audra met the statutory requisites.

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995); In re J.A.C., No. 14-02-00806-CV, 2005 Tex.App. LEXIS 4519, at *2 (Tex.App.–Houston [14th Dist.] June 14, 2005, pet. denied) (memo. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. Robinson, 923 S.W.2d at 558; In re J.A.C., 2005 Tex.App. LEXIS 4519, at *3. We must uphold the trial court's decision so long as it falls within the zone of reasonable disagreement. Wheeler v. State, 67 S.W.3d 879, 888 (Tex.Crim.App. 2002); In re J.A.C., 2005 Tex.App. LEXIS 4519, at *3. A trial court's ruling in admitting or excluding evidence must be sustained if reasonably supported by the record and correct on any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim.App. 2002); In re J.A.C., 2005 Tex.App. LEXIS 4519, at *3.

In the present case, Audra's testimony regarding what Jane Doe told her was admissible as an excited utterance and, as such, any failure to meet the statutory requisites for an outcry statement is not error. It is clear that Audra's testimony of what Jane Doe told her is hearsay. See TEX. R. EVID. 801(d). However, Rule 803 provides a number of exceptions to the general rule that hearsay is not admissible. An excited utterance is not excluded by the hearsay rule, regardless of the declarant's availability, and is defined as "A statement relating to a startling event or condition made while the

6

declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). To meet this exception, the statement must (1) be the product of a startling occurrence that produces a state of nervous excitement in the declarant that renders the statement spontaneous and unreflecting, (2) have been made at a time when the state of excitement still so dominates the mind of the declarant that there is no time or opportunity to contrive or misrepresent, and (3) relate to the circumstances of the occurrence preceding it. See Sellers v. State, 588 S.W.2d 915, 918 (Tex.Crim.App. 1979). The reviewing court should not examine each requirement independently, but should rather focus on whether the combined effect shows the statement to be sufficiently reliable. Id.

In the present case, the evidence establishes that Jane Doe began to cry uncontrollably immediately after Gwen witnessed the encounter between Jane Doe and A.W.B. The time elapsed between when Gwen witnessed the encounter and Jane Doe made the declaration that A.W.B. "put his private in her mouth" was approximately 10 minutes and, throughout this period, Jane Doe cried. Further, while Audra asked Jane Doe what was wrong, the declaration was not the result of questioning and was a spontaneous declaration regarding the occurrence that caused the emotional state Jane Doe was in at a time that Jane Doe was still in that emotional state. From these facts, we cannot say that the trial court abused its discretion in admitting Audra's testimony relating Jane Doe's declaration.

We overrule A.W.B.'s first issue.

7

Mental Illness or Mental Retardation

By his second issue, A.W.B. contends that the trial court abused its discretion by failing to conduct a hearing to determine whether A.W.B. was responsible for his conduct due to mental illness or mental retardation. Whether a juvenile is not responsible for the juvenile's conduct as a result of mental illness or mental retardation shall be tried to the court or jury during the adjudication hearing. § 55.51(c). Within this issue, A.W.B. contends that the trial court failed to make the determination regarding A.W.B.'s responsibility and failed to admit and consider all of the relevant evidence on whether A.W.B. was responsible for his actions.

Section 55.51(d) of the Texas Family Code provides that a juvenile's lack of responsibility for conduct as a result of mental illness or mental retardation must be proven by a preponderance of the evidence. § 55.51(d). Such a claim is a defense that must be proven by the juvenile. See In re E.L.C., 656 S.W.2d 149, 150 (Tex.App.–San Antonio 1983, writ ref'd n.r.e.). As addressed above, we will review the trial court's decision to admit or exclude evidence for abuse of discretion. Robinson, 923 S.W.2d at 558; In re J.A.C., 2005 Tex.App. LEXIS 4519, at *2-*3.

Initially, we note that the trial court is not required to hold a separate hearing to determine whether A.W.B. was responsible for his actions. See § 55.51(b) (defensive theory must be tried "in the adjudication hearing"); In re E.L.C., 656 S.W.2d at 150 (separate hearing not mandated). Thus, to the extent that A.W.B. claims that the trial

8

court erred in failing to hold a separate hearing on A.W.B.'s responsibility, we overrule the issue.

Moreover, we cannot conclude that the trial court failed to make a determination regarding whether A.W.B. was not responsible for his conduct as a result of mental illness or mental retardation. The trial court's adjudication of A.W.B.'s guilt constitutes an implied rejection of the defensive theory. See Adelman v. State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). Thus, the trial court's adjudication that A.W.B. engaged in the delinquent conduct alleged by the State is an implied rejection of A.W.B.'s defense that he lacked responsibility due to a mental illness or mental retardation.

Thus, by A.W.B.'s second issue, we are left with a challenge to the trial court's decision to exclude the report of Dr. Wall's psychological examination of A.W.B. When A.W.B. offered Dr. Wall's report for admission into evidence, the State objected on the basis that the report was ordered under a statute that allows for only a general psychological evaluation and, as such, it was not relevant to any issue before the trial court in the adjudication hearing. A.W.B. responded that Dr. Wall's report addresses whether A.W.B. was capable of forming the intent that is an element of two of the offenses alleged by the State and, therefore, it is relevant defensive evidence. The trial court sustained the State's objection to the report. After the trial court excluded Dr. Wall's report, Dr. Wall began to testify regarding Asperger's Disorder, which is a condition that Dr. Wall diagnosed A.W.B. to have. During his testimony, the State again objected to the relevancy of the testimony. Following the State's objection, the trial court asked A.W.B.'s counsel if this testimony was being offered as an insanity defense.

9

Counsel stated that, in effect, it was. The trial court asked counsel if notice had been given of an insanity defense. Counsel said no. The trial court then sustained the objection.

Initially, we note that section 55.51 does not require that a respondent give notice of intent to assert the defense of lack of responsibility due to mental illness or mental retardation. See § 55.51. Furthermore, our review of Dr. Wall's report, which was admitted into evidence during the disposition hearing, leads us to conclude that the report was relevant to the issues before the trial court during adjudication and that there was no valid basis for exclusion of the evidence. Therefore, we conclude that the trial court abused its discretion in sustaining the State's objection to the report.

As to the State's objection to Dr. Wall's testimony, however, at the time that the trial court sustained the objection, Dr. Wall was testifying regarding studies done on chimpanzees as a means to explain Asperger's Disorder to the court. After reviewing this testimony, we conclude that the State's relevancy objection was well taken. Further, at no point during Dr. Wall's testimony was Dr. Wall asked if A.W.B. had a mental illness or mental retardation that would prevent him from being responsible for his actions. The most that can be taken from Dr. Wall's testimony is that A.W.B. suffers from Asperger's Disorder and that this condition limits A.W.B.'s ability to understand abstract subtleties. Further, no offer of proof was requested to allow Dr. Wall to articulate his opinion regarding whether A.W.B. was not responsible for his actions due to mental illness or mental retardation.

While we have concluded that the trial court abused its discretion in excluding Dr. Wall's report from evidence in the adjudication hearing, we must determine whether this error harmed A.W.B. For the trial court's error to be reversible, we must determine that the error probably caused the rendition of an improper judgment or probably prevented A.W.B. from properly presenting the case to this Court. See TEX. R. APP. P. 44.1(a). Dr. Wall's report states that, "The problematic incident which currently brings [A.W.B.] to the court's attention does not reflect any integrated attempt to gain any sexual gratification. It was simply an un-integrated piece of behavior with no goal." Taking this statement as true, it fails to establish the requisites for the mental illness or mental retardation defense found in section 55.51. Nothing in the report identifies Asperger's Disorder as a mental illness that would meet the statutory definition. Additionally, while the report states that A.W.B. did not act with the intent to gain sexual gratification, the report falls short of concluding that A.W.B. was not responsible for his actions. Evidence was presented that A.W.B. was aware that what he was doing was wrong. Audra testified that A.W.B. told Jane Doe that if she told anyone about the incident that she would get in trouble. Further, when A.W.B. noticed Gwen, he "jumped" and pulled up his pants. While A.W.B.'s inability to form the requisite intent to satisfy his sexual desires is relevant to the proof of a couple of the offenses alleged by the State, it is not, of itself, sufficient to vitiate A.W.B.'s responsibility for committing the offense of aggravated sexual assault of a child, which does not require a specific intent to arose or gratify sexual desire. Even accepting Dr. Wall's erroneously excluded report to be true, it is insufficient to establish the statutory defense found in section 55.51, it did not

11

present a defense to aggravated sexual assault of a child, and sufficient evidence exists in the record to establish that A.W.B. was aware that his actions were wrong and, therefore, that he was responsible for those actions.

For the foregoing reasons, we overrule A.W.B.'s second issue. Because A.W.B.'s remaining issue addresses the trial court's disposition order, rather than the adjudication order, we affirm the trial court's adjudication that A.W.B. engaged in delinquent conduct by committing aggravated sexual assault of a child by penetration and vacate the trial court's adjudications that A.W.B. committed attempted aggravated sexual assault, indecency with a child by sexual contact, and indecency with a child.

## Disposition Order

Finally, by his third issue, A.W.B. contends that the evidence was both legally and factually insufficient to support the trial court's disposition committing A.W.B. to the Texas Youth Commission for an indeterminate sentence.

A trial court has broad discretion regarding the appropriate disposition in a juvenile case. In re M.L.B., 184 S.W.3d 784, 785 (Tex.App.–Amarillo 2006, no pet.). A trial court abuses its discretion when it acts arbitrarily or without regard to guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). However, an abuse of discretion does not occur merely because the reviewing court would have made a different decision than the trial court. Id.

In determining whether the evidence is sufficient to support the disposition ordered, we apply a civil standard of review. In re M.L.B., 184 S.W.3d at 786. When reviewing a legal sufficiency challenge, we review the entire record for any probative evidence which, when viewed in its most favorable light, supports the disposition. Id. We disregard all evidence and inferences to the contrary. Id. If there is more than a scintilla of probative evidence to support the finding, we must uphold the judgment. Id. If we determine that the evidence is legally sufficient, we then review all of the evidence in a neutral light and will set aside the judgment and remand for a new trial only if the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re A.S., 954 S.W.2d 855, 861 (Tex.App.–El Paso 1997, no pet.).

Section 54.04(i) provides that, if the trial court commits a juvenile to the Texas Youth Commission, the court must include in its order its determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

§ 54.04(i)(1). In addition, the trial court is required to "state specifically in the order its reasons for the disposition . . . ." § 54.04(f). Specification of the reasons for disposition places the child and his family in position to challenge those reasons on appeal and allows the reviewing court to determine whether those reasons are supported by the

13

evidence and whether they are sufficient to justify the particular disposition ordered. In re K.T., 107 S.W.3d 65, 68 (Tex.App.–San Antonio 2003, no pet.) (citing In re T.R.W., 533 S.W.2d 139, 141 (Tex.Civ.App.–Dallas 1976, no writ), overruled on other grounds, In re K.K.H., 612 S.W.2d 657 (Tex.Civ.App.–Dallas 1981, no writ)). While the findings mandated by section 54.04(i) are essential prerequisites to an order committing a juvenile to the Texas Youth Commission, even if the evidence to support these findings are "scant," evidence supporting the trial court's reasons under section 54.04(f) may justify an order of commitment. See id. at 68-69.

In the present case, the trial court found,

> reasonable efforts have been made to prevent or eliminate the need of [A.W.B.] to be removed from his home and to make it possible for [A.W.B.] to return to his home. The Court finds that the best interest of [A.W.B.] and the community will be served by placing [A.W.B.] outside his home and committing [A.W.B.] to the care, custody and control of the TEXAS YOUTH COMMISSION.

The trial court then identified its specific reasons for the disposition:

> - The seriousness of the offense(s) requires [A.W.B.] be placed in a restrictive environment to protect the public.
> - [A.W.B.] has a history of aggressive behavior.
> - [A.W.B.] has a history of persistent delinquent behavior.
> - Local resources of the Court are inadequate to properly rehabilitate [A.W.B.]

Initially, we note that A.W.B. does not challenge the sufficiency of the evidence in support of the findings required under section 54.04(c). These findings must be made in order for any disposition under section 54.04 to be made. A.W.B. contends that there

14

is legally and factually insufficient evidence to support the findings of the trial court under sections 54.04(i) and (f).

On the findings required by section 54.04(i), A.W.B. makes a strong case that the preponderance of the evidence established that removal of A.W.B. from the home would not be in his best interest, that reasonable efforts had been made to prevent A.W.B.'s removal from the home and that those efforts had been successful, and that A.W.B. could be provided the quality of care and level of support to meet the conditions of probation. However, to determine whether the trial court's commitment of A.W.B. to the Texas Youth Commission was justified, we must focus our review on the specific reasons articulated by the trial court in its disposition order. See In re K.T., 107 S.W.3d at 68.

After reviewing the evidence, we agree with A.W.B. that there is no evidence to support the trial court's findings that A.W.B. has a history of aggressive behavior and persistent delinquent behavior. The evidence established that the juvenile probation office of Hale County had never received a referral on A.W.B. for delinquent behavior. The social case history indicates that A.W.B. has had no behavioral problems at school. Further, there was no evidence presented that A.W.B. had ever exhibited any sort of prior aggressive behavior and there was no evidence presented of any specific examples of prior delinquent behavior that might not have been known to A.W.B.'s school or referred to the juvenile probation office. Therefore, we conclude that the trial court's history of aggressive behavior and persistent delinquent behavior reasons for its

15

disposition are not supported by legally sufficient evidence and we will reform the disposition order to remove these reasons.

Likewise, the evidence regarding whether local resources were adequate to rehabilitate A.W.B. was that, other than the restrictive environment, the applicable services available from the Texas Youth Commission and the juvenile probation office would be the same. Therefore, since the restrictive environment was specifically cited as a reason for commitment in the reason that will be analyzed below, we conclude that the lack of local resources reason for commitment does not justify A.W.B.'s commitment to the Texas Youth Commission.

Thus, the issue that we must resolve is whether the trial court's reasoning that the severity of the offense requires that A.W.B. be placed in a restrictive environment to protect the public, of itself, is sufficient to justify A.W.B.'s commitment to the Texas Youth Commission for an indefinite period. We have previously affirmed the trial court's adjudication that A.W.B. engaged in delinquent conduct by committing the criminal offense of aggravated sexual assault of a child by penetration. This offense is a first degree felony under the penal law. See TEX. PENAL CODE ANN. § 22.021(e). If a trial court finds, at the conclusion of an adjudication hearing, that a child has engaged in delinquent conduct by committing an offense under the laws of Texas that is of a grade of felony, the court may commit the child to the Texas Youth Commission without a determinate sentence. See § 54.04(d)(2). Thus, as the trial court did conclude that A.W.B. had engaged in delinquent conduct that is a felony under the penal law and as we have affirmed this adjudication, we cannot conclude that the trial court abused its

16

discretion by acting arbitrarily or without regard to guiding rules and principles. <u>Downer</u>, 701 S.W.2d at 241-42. We are constrained to conclude that the trial court did not abuse its discretion in this case, even though this Court might have made a different decision than the trial court. <u>Id</u>.

We overrule A.W.B.'s third issue.

Conclusion

For the foregoing reasons, we affirm the trial court's adjudication that A.W.B. engaged in delinquent conduct by committing aggravated sexual assault of a child by penetration and vacate the trial court's adjudications that A.W.B. committed attempted aggravated sexual assault, indecency with a child by sexual contact, and indecency with a child. We reform the trial court's disposition order to remove the history of aggressive behavior and history of persistent delinquent behavior reasons for disposition and, in all other respects, affirm the trial court's disposition committing A.W.B. to the Texas Youth Commission for an indeterminate period not to exceed his 19th birthday.

Mackey K. Hancock
Justice