

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00303-CV

---

## IN THE MATTER OF I.M.M., A CHILD

---

On Appeal from the County Court
Hale County, Texas
Trial Court No. C3014-1805, Honorable Bill Coleman, Presiding

---

February 25, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

I.M.M., a juvenile, appeals the trial court's disposition order committing him to the Texas Juvenile Justice Department (TJJD) for an indeterminate period. We will overrule I.M.M.'s three appellate issues and affirm the disposition order of the trial court.

Background

According to the allegations of the State, thirteen-year-old I.M.M. engaged in delinquent conduct by committing the offenses of aggravated robbery[1] of the Happy Stop

---

[1] TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

convenience store in Plainview, Texas, and evading arrest or detention.[2]   The

adjudication and disposition hearings in the case were tried to the bench.   At the

adjudication hearing, I.M.M. stipulated to his involvement in the offenses alleged and

plead true to the State's allegations.   The court found I.M.M. had engaged in the

delinquent conduct alleged.

After the adjudication hearing the court convened a contested disposition hearing

which is the focus of this appeal.   I.M.M. did not contest placement outside the home.

The question for the disposition hearing was whether the placement should be a "boys'

ranch" or bootcamp, as I.M.M. requested, or commitment to TJJD, as the State sought.

At the hearing's conclusion the court rendered findings, including those stating I.M.M. was

in need of rehabilitation and protection, and the public required protection.   It ordered

I.M.M. committed to TJJD for an indeterminate period not to exceed his nineteenth

birthday.

Analysis

Second and Third Issues

By his second and third issues, I.M.M. argues the trial court abused its discretion

by committing him to TJJD because the evidence was legally or factually insufficient to

prove: (1) reasonable efforts were made to prevent or eliminate the need for his removal

from the home and to make it possible for him to return to his home; and (2) in his home

I.M.M. cannot be provided the quality of care and level of support and supervision he

---

[2] TEX. PENAL CODE ANN. § 38.04(a) (West 2016).

2

needs to meet the conditions of probation. *See* TEX. FAM. CODE ANN. § 54.04(i)(1)(B),(C) (West Supp. 2018).

A juvenile court has broad discretion to determine the proper disposition of a child adjudicated as engaging in delinquent conduct. *In re A.W.B.,* 419 S.W.3d 351, 359 (Tex. App.—Amarillo 2010, no pet.). A trial court abuses its discretion when it acts arbitrarily or without regard to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). When the abuse of discretion standard is used to review a court's disposition order in a juvenile matter, legal and factual insufficiency are relevant factors. *In re C.G.,* 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.).

An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate there is no evidence supporting the adverse finding. *In re J.W.M.,* 2008 Tex. App. LEXIS 3551, at *8-9 (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983)). In determining the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *Scott's Marina at Lake Grapevine, Ltd. v. Brown,* 365 S.W.3d 146, 151 (Tex. App.—Amarillo 2012, pet. denied) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005)).

Factual sufficiency review is subject to only one standard of review regardless of whether the court of appeals reviews a negative or affirmative finding or whether the complaining party bore the burden of proof on the issue. *M.D. Anderson Hosp. & Tumor Inst. v. Felter,* 837 S.W.2d 245, 247 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing *M.J. Sheridan & Son v. Seminole Pipeline Co.,* 731 S.W.2d 620, 623 (Tex. App.— Houston [1st Dist.] 1987, no writ)). The court of appeals first examines all of the evidence,

*Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986) (per curiam), and, after considering and weighing all of the evidence, must set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex. App.—Houston [1st Dist.] 1988, no writ). In a bench trial, the court, as fact finder, is the exclusive judge of the witnesses' credibility and the weight given their testimony, and is free to resolve any inconsistencies in the evidence. *Iliff v. Iliff,* 339 S.W.3d 74, 83 (Tex. 2011). It is authorized to believe some, all, or none of a witness's testimony. *Rivas v. Rivas,* No. 01-10-00585-CV, 2012 Tex. App. LEXIS 412, at *5 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.).

Family Code section 54.04(i) requires that a court placing a child on probation outside the child's home or committing the child to TJJD shall include in its order its findings that:

(A) it is in the child's best interest to be placed outside the home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

TEX. FAM. CODE ANN. § 54.04(i)(1).

The trial court's disposition order contains the required findings under section 54.04(i)(1) but as noted I.M.M. contends the evidence supporting the findings under subsections (B) and (C) is insufficient. After review of the record, we find the contention

4

disregards the evidence the court heard and the posture of the parties at the disposition hearing.

Disposition hearing evidence showed I.M.M. was age thirteen. During the spring of 2018 I.M.M. lived in Fort Worth with his parents and was enrolled in the seventh grade. His mother, V.M., testified she withdrew him from school in late April and planned to begin homeschooling. Instead he was sent to Plainview to visit his grandmother until Mothers' Day. After arriving in Plainview, I.M.M. did not enroll in school.

Evidence showed I.M.M.'s seventeen-year-old brother, J.M., and his eleven-year-old cousin, A.G., also were staying with grandmother. J.M. arrived in Plainview some three or four months before I.M.M. and did not attend school. While in the care of grandmother, J.M. and A.G were allegedly involved in the robbery of another Plainview convenience store. At points during the disposition hearing, J.M. was referred to as the "ring leader" of the Happy Stop robbery.

There was hearing testimony that while in grandmother's care, I.M.M. smoked marijuana. J.M. became aware of this fact and used the threat of reporting it to grandmother or the boys' parents as leverage to coerce I.M.M. into robbing the Happy Stop.

The Happy Stop robbery occurred less than two weeks after I.M.M. arrived in Plainview. Evidence showed in the course of committing the offense I.M.M. wore a black ski mask and brandished a loaded .380 caliber handgun at the store attendant and her relative while demanding money. I.M.M. took money and cigars from the store and attempted to flee responding police officers. He was later apprehended and officers

5

recovered the money and cigars. The handgun was located on the floor of the store. After he was taken into custody, I.M.M. was transported to the Lubbock County Juvenile Detention Center where he remained under detention orders until completion of the disposition hearing. Detention center officers from the Lubbock facility testified I.M.M. had caused no problems since placed in their care.

I.M.M. testified on his own behalf and read a prepared, conciliatory statement to the trial court. I.M.M. clearly expressed regret and sorrow for what he had done. He told the court he did not want to spend the remainder of his teenage years "locked up."

The probation officer assigned I.M.M.'s case testified the juvenile probation department recommended the court commit I.M.M. to TJJD because of the seriousness of I.M.M.'s offense. The officer agreed that at the time I.M.M. did not have the quality of care and support in the home that would allow him to be placed on probation and returned to the home. We find the officer's conclusion supported by the undisputed evidence showing I.M.M.'s parents allowed their son to withdraw from the seventh grade and leave Fort Worth for the home of a grandmother who did not require school attendance and did not or could not provide proper supervision. We further find the conclusion supported by the evidence indicating the parents had found it necessary to place at least two of their children outside their home because of undescribed hardships. I.M.M.'s older brother J.M. had lived with grandmother for several months before I.M.M.'s arrival in Plainview. While in grandmother's care I.M.M. smoked marijuana and, like his brother, did not attend school; while at grandmother's I.M.M. obtained a handgun, a ski mask and black clothing, and formed and carried out a plan to place the lives of others in jeopardy for the sake of stealing what was not his.

V.M.'s parental statement, which was attached to the probation officer's social history and in evidence, states that the family "has always lived with other family members due to hardships," and that during 2017 they "had to stay at a motel." I.M.M.'s parents moved to Plainview from Fort Worth when I.M.M. was taken into custody after the robbery, and at the time of the hearing were staying in the home of the boys' maternal aunt.[3] The probation officer further testified to her opinion a family placement was not possible and I.M.M.'s parents had not provided proper supervision for their son. On cross-examination, the probation officer agreed she had not performed an evaluation of I.M.M.'s parents' home in Fort Worth and could not tell the court whether that would be a proper placement for I.M.M. That admission seems to us of little import, however, because it was undisputed the parents were no longer at home in Fort Worth; later, V.M., the mother, seemed to indicate they would move wherever I.M.M. was placed.

Although at the hearing V.M. wanted to take her son "home" and testified she had investigated community programs, I.M.M. did not dispute that he could not return home, whether to that of grandmother or his parents. The issue tried was where outside the home he should be placed. The court reasonably could have believed that alternatives to removal of I.M.M. from the home of his parents or grandmother were unavailable. In closing argument, in fact, counsel for I.M.M. made clear that I.M.M. could not be returned home. Counsel's argument was that I.M.M. should be placed in a "boys' ranch" or boot camp, placements that also are outside the child's home. We conclude the court's findings under § 54.04(i)(1)(B),(C) are supported by sufficient evidence and the trial court

---

[3] The financial information in the social history shows that both parents were employed, the mother in Plainview and the father in nearby Lubbock, and that they were paying $200 rent per month.

did not abuse its discretion in making those findings. *See In re A.W.B.,* 419 S.W.3d 351 (Tex. App.—Amarillo 2010, no pet.) (finding evidence under section 54.04(i) for commitment to former Texas Youth Commission sufficient); *In re M.L.B.,* 184 S.W.3d 784 (Tex. App.—Amarillo 2006, no pet.) (same). Accordingly, we overrule I.M.M.'s second and third appellate issues contending otherwise.[4]

First Issue

By his first issue, I.M.M. argues the trial court erroneously considered his involvement in a prior deferred disposition case from Tarrant County in reaching its determination to commit him to TJJD. We find this issue was not first presented to the trial court and an adverse ruling obtained. TEX. R. APP. P. 33.1(a). Accordingly, the question is not preserved for our review. I.M.M.'s first issue is overruled.

Conclusion

Having overruled I.M.M.'s three issues on appeal, we affirm the disposition order of the trial court.

James T. Campbell
Justice

---

[4] We note also that the disposition order, in its decretal paragraph, states that I.M.M.'s commitment to TJJD is made "in accordance with . . . Sections 54.04(d)(2) and 54.04013 of the Texas Family Code . . . ." The order contains the finding required under section 54.04013 for a special commitment to TJJD, stating that I.M.M. "has behavioral health or other special needs that cannot be met with the resources available in the community." TEX. FAM. CODE ANN. § 54.04013 (West Supp. 2018). The finding is not challenged in this court.