

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00173-CV

---

**LANE IVY, INDEPENDENT EXECUTOR OF THE ESTATE OF BILLY GLENN IVY, JR., DECEASED, APPELLANT**

**V.**

**SANDY KAY BUTLER, INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF CHARLESETTA MARIE TELFORD, APPELLEE**

---

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 107, 483-E-CV, Honorable Douglas R. Woodburn, Presiding

---

January 28, 2026

## MEMORANDUM OPINION[1]

### Before PARKER, C.J., and DOSS, J., and QUINN, S.J.[2]

Though Lane Ivy poses one issue concerning the allegedly improper admission of evidence (i.e., a videoed statement), another is of equal interest. It pertains to the preservation, under Texas Rule of Evidence 105(b)(1), of the alleged error during the

---

[1] Though the appellant and appellee appear here as representatives of the estates of Billy Glenn Ivy, Jr. and Charlesetta Marie Telford, respectively, we refer to the representatives simply by their names.

[2] Brian Quinn, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

bench trial. Sandy Kay Butler suggests that to preserve the alleged error raised here, Ivy was required to ask the trial court to consider or instruct itself to consider same only for a limited purpose. We affirm.

*Background*

The evidence in question consists of a recorded statement by Anthony Richards to law enforcement officials. In it, he confessed to killing Charlesetta Marie Telford and her unborn child. As further revealed in the recording, he purportedly did so via a financial arrangement with Billy Glenn Ivy, Jr. The killing resulted in Charlesetta's estate, through Butler, initiating a civil suit against both Richards and Ivy, Jr. for damages.

Ivy, Jr. died before trial. Though alive, Richards refused to testify at or participate in the bench proceeding. Nevertheless, Butler proffered Richard's recorded statement in evidence. The trial court admitted it over Ivy's objections. Ultimately, it also entered verdict for Butler, thereby awarding Telford's estate damages against both Richards and Ivy, Jr. Only Ivy appealed from the judgment.

*Argument*

As indicated earlier, Ivy argues that the recorded statement was inadmissible for various reasons. They concern hearsay, the right to cross examine witnesses, and the Dead Man's Rule. But the complaint is beyond our consideration, according to Butler, since Ivy failed to preserve the alleged error under Texas Rule of Evidence 105(b)(1). We first address preservation. *See* TEX. R. APP. P. 33.1(a) (describing preservation "as a prerequisite to presenting a complaint for appellate review").

First, the evidentiary rule in question states that: "[a] party may claim error in a ruling to admit evidence that is admissible against a party or for a purpose—but not

against another party or for another purpose—only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(b)(1); *Gary v. State*, No. 02-21-00171-CR, 2023 Tex. App. LEXIS 2283, at *16 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication). Second, Butler named as defendants and sought damages against both Richards and Ivy, Jr. for assault and "murder." Third, to secure such recovery, it was encumbent upon Butler to prove that both defendants were responsible for that assault and death.

Now, Richards inculpated himself through his recorded statement to law enforcement officials. That is, his out-of-court statement can reasonably be deemed an admission or statement made by an opposing party. As such, it would fall outside the realm of hearsay. *See* TEX. R. EVID. 801(e)(2) (noting that a statement is not hearsay if offered against an opposing party and was made by that party in an individual capacity); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (stating that a "party's own statements are not hearsay and they are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements"); *Goley v. State*, Nos. 07-18-00145-CR, 07-18-00302-CR, 2019 Tex. App. LEXIS 6699, at *6 (Tex. App.—Amarillo Aug. 2, 2019, no pet.) (mem. op., not designated for publication) (holding that appellant's statements made during the telephone conversations constituted admissions by a party-opponent and were not hearsay). So, from this perspective, Richards' statement about killing Telford would be admissible to establish his civil liability. The trial court also could have concluded, rather reasonably, that it served as evidence of his malice at the time, which, in turn, furthered Butler's effort to obtain exemplary damages. That is, being hired to kill the decedent not only negated any argument

3

regarding accident or the like but also went far to establish the specific intent needed to prove malice. *See Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 922 (Tex. 2013) (stating exemplary damages are recoverable when harm arises through fraud, malice, or gross negligence); *see also* TEX. CIV. PRAC. & REM. CODE § 41.001(7) (defining malice as the specific intent to cause substantial injury or harm to the claimant). Thus, the foregoing circumstances and law could well have justified a trial court's decision to admit the recording to prove Richards' liability, irrespective of its admissibility to prove that of Ivy, Jr. And, there is where Rule 105(b)(1) and its purpose are implicated.

Yet, Ivy objected to the admission of the recording in toto. And, the appellate issue mirrors that scope. That is, Ivy continues to contend "[t]he video was admitted in error, and this error probably caused the rendition of an improper judgment." In response to that contention, though, Ivy interjects Rule 105(b)(1) and its mode of preserving for review complaints about the admission of evidence admissible for one purpose but not another.

Ivy said nothing about Rule 105(b)(1) below. Nor did he posit that though the video may be admissible to establish Richards' liability it must not be considered when assessing Ivy, Jr.'s. Instead, Ivy tells us Rule 105(b)(1) is irrelevant when trial is to the bench, and that is the debate we address.

We found no authority addressing the precise point before us. Nor did the parties cite us to that proverbial "white horse" case or case "on all fours." That leaves us to journey through previously uncharted waters. Yet, analysis leads us to the destination selected by Butler.

4

We begin with the circumstances of record. Again, they consist of 1) one plaintiff suing two defendants, and 2) one uttering an admissible statement potentially establishing his own liability for both actual and exemplary damages.

Next, the rules concerning the preservation of error serve to afford a trial court the first opportunity to correct and avoid potential mistakes. *Expelled Grain Prod. LLC v. Corn Mill Enterpr. LLC*, No. 07-14-00398-CV, 2016 Tex. App. LEXIS 9002, at *23 (Tex. App.—Amarillo Aug. 17, 2016, pet. denied) (mem. op.). This is important because of the tenor of Ivy's objections. Again, they likened to tossing a blanket over the entire bed, not merely one portion of it. In such a scenario, the blanket covers everyone, not simply those who need or want it. In other words, Ivy built a framework through which the court was asked to view his objections to the video statement, and that framework was too broad. It left the trial court with deciding whether the evidence should be excluded for all purposes despite being admissible for some. In a way, one can reasonably interpret the scope of Ivy's objection as urging the court to err by accepting his invitation to exclude the video for all purposes.

Rule 105(b)(1) serves to construct the appropriate framework. There are times when, like here, evidence is admissible for one purpose or against one opponent but not for all purposes or against all parties. In those situations, the court should be informed of that and, thereby, afforded opportunity to avoid a pitfall of acting too broadly. Rule 105(b)(1) affords that opportunity and saddles the objecting party with the onus of triggering its provision.

Moreover, not seeking such a limitation tends to rather automatically insulate the complaint from a finding of error. Simply put, reversal of a judgment is contingent upon

5

the existence of error. And, the burden lies with the appellant to prove error. *Lee v. Ag. Tex. Farm Credit Serv.*, No. 07-21-00129-CV, 2021 Tex. App. LEXIS 9789, at *5–6 (Tex. App.—Amarillo Dec. 8, 2021, pet. denied) (mem. op.). When the issue implicates the admission of evidence, that burden obligates the appellant to establish an instance of abused discretion. *In re A.W.B.*, 419 S.W.3d 351, 356 (Tex. App.—Amarillo 2010, no pet.). It obligates the complainant to illustrate that the trial court's decision failed to comport with controlling guidelines or principles. *Id.* But what if evidence were relevant to and admissible for purposes of establishing one issue . . . it would strain logic to say it is inadmissible for all purposes. Therefore, admitting it would comport with controlling guidelines and principles and fall within the legitimate scope of discretion. That is, we could not legitimately say that the trial court abused its discretion when admitting evidence that was admissible for some purposes when no one asked it to limit those purposes.

Admittedly, Rule 105(b)(1) mentions "instruct[ing] the ***jury*** accordingly." TEX. RULE EVID. 105(b)(1) (emphasis added). And, Ivy focuses on that language when arguing for the Rule's inapplicability. Of course, there is no need to fashion an instruction to a jury in a bench trial. Yet, Ivy acknowledged that rules governing jury trials may not ***strictly*** apply to bench trials, including rules of evidence. *See Smith v. Hughes*, 23 Tex. 248, 249 (1859) (stating that "[t]he rules which regulate the admission of evidence in trials by jury, do not apply strictly, where the trial of the fact is by the court"). Yet, we cannot reasonably deny that Rule 105(b)(1) serves a purpose in both jury and bench trials. Recognizing as much would not foster the Rule's purpose by jettisoning the entire Rule in a bench trial . . . that tossing out the baby with the bath water kind of thing. Rather, it would seem logical to

6

abide by *Smith v. Hughes* and toss out the bath water while retaining the baby. In a bench trial, the bath water would be the need to request an instruction to the "jury."

As for the authorities cited by Ivy in the appellate brief, we find them inapposite. For instance, *Young v. State*, 994 S.W.2d 387 (Tex. App.—Houston [14th Dist.] 1999, no pet.), did not deal with preservation of error under Rule 105(b)(1). Yet, it did say, after referencing that rule, that "[l]ogic dictates . . . our trial courts would follow the same rule of law in a bench trial" as in a jury trial. *Id* at 389. We do not interpret the latter phrase as indicating a trial court should instruct itself to limit its consideration of evidence in scenarios within Rule 105; but, by the same token, it cannot be interpreted as saying a party need not remind the court, per Rule 105(b)(1), to limit consideration of evidence like that at bar to particular purposes.

As for Ivy's citation to *Smith v. Hughes*, it too dealt not with preservation of error. *Smith*, 23 Tex. at 249. The same is true of *Gray v. Bird*, 380 S.W.2d 908 (Tex. App.— Tyler 1964, writ ref'd n.r.e.). Preservation of error under Rule 105(b)(1) was not at issue.

In short, the recording in dispute here was admissible for some purposes but not others. Ivy did not attempt to make that distinction when trying to sway the trial court to exclude it. He wanted it all out despite being admissible for some purposes. Nor did he ask the court to limit its consideration to those permissible purposes. We conclude, for the reasons expressed above, Rule 105(b)(1) was applicable below and necessary to preserve his complaint for review. Consequently, his sole issue before us went unpreserved. That leads us to overrule it and affirm the trial court's judgment.

Brian Quinn<br>
Senior Justice

7