Ronald G. PENDLEY, Judy Pendley, and The First National Bank of Amarillo, Texas, Appellants,

v.

Euel B. FITE, Appellee.

No. 9118.

Court of Civil Appeals of Texas, Amarillo.

June 30, 1980.

Rehearing Denied July 23, 1980.

Gibson, Ochsner & Adkins, John Huffaker, Amarillo, for appellants.

Garland D. Sell & Associates, Inc., Patrick A. Pirtle, Amarillo, for appellee.

DODSON, Justice.

This is an action in trespass to try title for title to an "L" shaped forty-foot strip of real property situated in Potter County, Texas. The appellants are Ronald G. Pendley, his wife Judy Pendley and the First National Bank of Amarillo.[1] The appellee is Euel B. Fite. The action was instituted by Fite. He claims title to the property by virtue of a warranty deed dated 22 March 1955 and by adverse possession under the three, five, ten and one of the twenty-five year statutes of limitations.[2] The Pendleys claim title to the property under a warranty deed dated 19 August 1977.

Trial was to a jury and in response to the special issues, the jury found, *inter alia*, adverse possession under the three, five, ten and the twenty-five year statutes of limitations. On these findings, the court rendered judgment for Fite. Appealing from the judgment, the appellants attack the legal and factual sufficiency of the evidence to support the jury's answers to the adverse possession issues. We affirm.

For clarity, we use the following diagram to illustrate the property in question and the adjacent properties owned by the respective parties.

1. On 19 August 1977, Ronald G. Pendley gave a Deed of Trust Lien on the property in question to the First National Bank of Amarillo.

2. The respective statutes of limitations are articles 5507, 5509, 5510 and 5519 of the Texas Revised Civil Statutes Annotated (Vernon 1958 & Vernon Supp.1980).

U.S. Highway 66

150' 40' ---- corner post

Lot one

TRACT A

Spring 1956
fence line

Lot twelve

N. ↑

40' TRACT B ---- corner post

397.57'

TRACT C

753.72'

380'

Tract "B" is the property in question. The Pendleys own title to Tract "A" and Fite owns title to Tract "C".

The parties stipulate that Maurine Bush is the common source of title to the property in question. By special warranty deed dated 17 March 1947, Maurine Bush, individually and as independent executrix of the Estate of James A. Bush, deceased, conveyed to Frank Green the following property lying and being situated in Potter County, Texas and described as:

LOTS one (1), two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), and twelve (12), BLOCK eight (8), in Soncy, Texas, as shown by the recorded plat of said addition recorded in the Deed Records of Potter County, Texas, being part of Section Sixty-One (61), Block Nine (9), BS&F, Potter County, Texas.

This property is shown as Tract "A" on the diagram set forth above.

By order of the Potter County Commissioners' Court dated 15 December 1947, the plats of the town of Soncy and of Soncy Heights, an addition to the town of Soncy, were cancelled and vacated. The order provides, *inter alia*, that lots one (1) to twelve (12), inclusive, in Block No. eight (8) of the town of Soncy, owned by Frank Green, are excepted from the cancellation and vacation order. This order further provides:

> But, subject to these exceptions, the said plats and dedications of both the said Town of Soncy and of Soncy Heights, an Addition to the Town of Soncy, *and likewise the streets and roads shown thereon, shall be, and the same hereby are, set aside and vacated, and the property covered thereby, being a part of the northern part of Section No. Sixty-one (61), Block No. Nine (9), BS&F Survey, Potter County, Texas, shall be, and the same is hereby, returned to acreage* (emphasis added).

Tract "B" is a part of Robinson street and St. Madeline street as shown on the plat of the town of Soncy. The streets were never opened to or used by the public.

By a deed dated 19 August 1977, Frank Green and Dana Opa Green conveyed to Ronald G. Pendley a 1.682 acre tract of land situated in the N.E.¼ of Section 61, Block 9, BS&F Survey, Potter County, Texas, by metes and bounds. The property described by metes and bounds in the deed is Tracts "A" and "B" on the above diagram, and by virtue of this deed, Pendley claims title to the land designated as Tract "B". He reasons that by operation of law the special warranty deed dated 17 March 1947, from Mrs. Bush to Frank Green, conveyed one-half of Robinson street adjacent to the east portions of lots one (1) to twelve (12) of the town of Soncy and one-half of St. Madeline street south and adjacent to lot twelve (12). He further argues that when the plat of the town of Soncy was cancelled and vacated by the Commissioners' Court's order dated 15 December 1947, title to the area designated as Tract "B" then vested in Frank Green.

The record shows, *inter alia*, that by a warranty deed dated 26 October 1950, Maurine Bush conveyed to Margaret B. Jones a 3.834 acre tract of land lying and being situated in Survey No. 61, Block 9, BS&F Survey of Potter County, Texas, and specifically described by metes and bounds. In this deed, the property described by metes and bounds is shown as Tracts "B" and "C" in the diagram. By a special warranty deed dated 22 March 1955, Margaret B. Jones conveyed to J. R. Lyons and E. B. Fite the 3.834 acre tract described by metes and bounds in the warranty deed dated 26 October 1950 from Maurine Bush to Jones. Then, by a special warranty deed dated 1 June 1956, J. R. Lyons conveyed his interest in and to the 3.834 acre tract to Euel B. Fite.[3]

At the trial, Fite claimed title to the property in question by virtue of his chain of title from Maurine Bush and by virtue of the three, five, ten and twenty-five year statutes of limitations. In response to special issues five through eight the jury found that:

1. Euel B. Fite, or his predecessors in title, held peaceable and adverse possession of the land in controversy under title or color of title for any period of three consecutive years before August 24, 1977, and after October 30, 1950.

2. Euel B. Fite, or his predecessors in title, have held peaceable and adverse possession of the land in controversy, cultivating, using or enjoying and claiming under a deed or deeds duly registered for any period of five consecutive years before August 24, 1977, and after October 30, 1950.

3. Euel B. Fite, or his predecessors in title, have held peaceable and adverse possession of the land in controversy cultivating, using or enjoying the same, or any part thereof, for any

---

**3.** All of the deeds mentioned in this opinion are filed in the office of the county clerk of Potter County, Texas. The specific time of the filing of the respective deeds is not significant to the decision in this case.

period of ten consecutive years before August 24, 1977, and after October 30, 1950.

4. Euel B. Fite, or his predecessors in title, have held peaceable and adverse possession of the land in controversy, or any part thereof, for any period of twenty-five years before August 24, 1977, and after October 30, 1950, under a claim of right, in good faith and under a deed or deeds, or other instrument or instruments duly registered purporting to convey such lands.

The Pendleys filed a Motion for Judgment Notwithstanding Verdict and Motion to Disregard Jury Findings to special issues five through eight. On appeal they maintain that the judgment should be reversed because no evidence of adverse possession exists to support the jury's answers to those special issues. In determining these legal insufficiency challenges, we can consider only the evidence and inferences tending to support the findings and we must disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974).

The evidence shows that Margaret B. Jones purchased the 3.834 acre tract of land from Maurine Bush by a warranty deed dated 26 October 1950 and filed for record in the office of the County Clerk of Potter County, Texas on 30 October 1950. The 3.834 acre tract is described by metes and bounds in the 26 October 1950 deed. The 3.834 acre tract comprises Tracts "B" and "C" in the diagram set forth above.

In the spring of 1951, Eldon Plunk built a fence from the northeast corner of Tract "B", west to the northwest corner of such tract, then south along the west line of Tract "B" and on the east line of lots one to twelve of block eight of the town of Soncy; hence, west from the southeast corner of lot twelve along the south line of such lot. This fence enclosed the 3.834 acre tract of land owned by the Bush Estate. Margaret B. Jones was an employee of the Bush Estate. Mr. Plunk, as a tenant of Margaret B. Jones and the Bush Estate, built the fence in payment for the privilege of grazing the land for one year.

At the time Mr. Plunk built the fence, Frank Green resided on lots one to twelve. Mr. Plunk testified that Frank Green instructed him to set the corner post at the northeast corner of lot one, and another corner post at the southeast corner of lot twelve. Mr. Plunk further stated that he had been familiar with the 3.834 acre tract since the spring of 1951 and that the tract had been grazed by livestock each year since that time.

By warranty deed dated 22 March 1955 and filed for record on 23 March 1955, J. R. Lyons and Euel B. Fite purchased the 3.834 acre tract from Margaret B. Jones. Fite stated that he and Lyons grazed livestock on the tract. By a 1 June 1956 warranty deed filed for record on 4 June 1956, Euel B. Fite purchased J. B. Lyon's interest in the 3.834 acre tract. Fite further stated that he had grazed livestock on the tract each year up to 1977 and that he had paid the taxes on the property each year since he had acquired the property. The record shows tax receipts on the 3.834 acre tract for the years of 1972, 1973, 1974, 1975, 1976 and 1977 issued to Fite by the County Tax Assessor and Collector of Potter County, Texas. Fite also stated that he had continuously maintained the fence originally built by Mr. Plunk, and that from time to time, Frank Green requested that he repair the fence to keep the livestock off Frank Green's garden and orchard located on the lots one to twelve tract.

Under the circumstances of this case, we are persuaded that evidence of probative force exists to support the jury's answer to special issues five, six, seven and eight. Nevertheless, the Pendleys contend that the possession of the property in question by Fite and his predecessors in title began with the consent of Frank Green, and that such consent was given by Frank Green to Eldon Plunk. In support of their consensual possession claim, they rely on testimony given by James R. Green.

James R. Green is the son of Frank Green, deceased. The evidence shows that James entered the military service before Frank Green purchased the lots one to twelve property in the town of Soncy in the year of 1947. James was a career military service person and never lived with his father on the town of Soncy property. He did, however, visit his father from time to time at the property. James testified that on one occasion, he and his father were sitting under some trees on the Soncy property when he heard a conversation between Mr. Plunk and his father. In essence, James stated that Mr. Plunk related to his father that it was hard for a working man to acquire the material to build a fence. Thus, his father told Mr. Plunk to join the fence he was building with Mr. Green's fence along the east side of lots seven, eight, nine, ten, eleven, twelve and the south side of lot twelve. Consequently, the Pendleys maintain that the possession of the property in question by Fite and his predecessors in title began with Frank Green's consent, and in the absence of a repudiation of the consensual possession, there is no adverse possession by Fite and his predecessors in title.

In the charge to the jury, the court defined "adverse possession" as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." In this connection, the court further instructed the jury that:

> When it appears that an adverse claimant's possession of property during all the statutory period necessary to perfect title by limitations was with the owner's assent or with his permission or that his entry was in recognition of or in subordination to the owner's title without a repudiation of such title, he cannot assert a title by adverse possession.

 Under the circumstances of this case, we are persuaded that the probative evidence raised the adverse possession issues submitted by the court and amply supports the jury's answers thereto. Assuming arguendo that the testimony of James Green showed the asserted consensual possession, then at best the jury simply did not believe him. In this connection, the jury is entitled to believe all, part or none of the testimony of any witness and draw its conclusions therefrom. *Pickens v. Baker*, 588 S.W.2d 406, 409 (Tex.Civ.App.—Amarillo 1979, no writ). Moreover, it is within the province of the jury to judge the credibility of the witnesses and determine the weight to be given their testimony. *Clodfelter v. Martin*, 562 S.W.2d 491, 493 (Tex.Civ.App.— Corpus Christi 1977, no writ).

 The Pendleys further claim that the property in question was incidentally enclosed as pasture land and that the grazing of livestock on incidentally enclosed pasture land is legally insufficient to accomplish adverse possession. In support of this position, they primarily rely on *McDonnold v. Weinacht*, 465 S.W.2d 136 (Tex.1971), and *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781 (1954). We do not consider the decision in either case controlling in this instance.

In *McDonnold*, the court said in effect that grazing of an enclosure casually or incidentally created as a result of being *fenced out* by the surrounding owners *does not* constitute actual and visible appropriation of the disputed land. Nevertheless, in the case before us, Fite and his predecessors in title actually and visibly appropriated the land in question by fencing in the property described in their respective deeds.

In *Orsborn*, the claimant asserted adverse possession to property outside the limits of his deeded property. His only "claim of right" was by virtue of an incidental enclosure with occasional grazing on the land. Neither the claimant nor his predecessors in title had any part in the construction of the fences that enclosed the large area, paid any taxes on the claimed property or executed any legal instruments affecting title to the claimed property. In essence, there was no proof of any open, visible or verbal acts on the part of the claimant or his predecessors in title "that manifested an intention to claim that land as his own." In *Orsborn* the court stated:

Closely related to the principle of incidental or casual enclosure is the question of the presence or the absence of the essential hostile claim or "claim of right". Article 5515 of the Revised Civil Statutes defines adverse possession as "an actual and visible appropriation of the land, commenced and continued *under a claim of right* inconsistent with and hostile to the claim of another." (Emphasis added.) 267 S.W.2d at 787. The court further explained that:

[A] claim of right must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed.

267 S.W.2d at 787.

In the case before us, the evidence shows open and visible acts on the part of Fite and his predecessors in title that manifested an intention to claim the land in question from the execution of the deed dated 24 October 1950 from Maurine Bush to Margaret B. Jones up to the date of trial. *See Butler v. Hanson*, 455 S.W.2d 942, 944–46 (Tex.1970). Accordingly, we overrule the Pendleys' contention.

The Pendleys further maintain that the evidence is factually insufficient to support the jury's answers to special issues five, six, seven and eight. In determining these evidentiary challenges, we must review all of the evidence in the record to ascertain if the findings are so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Having done so, we overrule the factual sufficiency challenges.

In summary, we overrule the Pendleys' points of error one, two and three, which are paraphrased in the contentions discussed herein. Our disposition of these points of error is dispositive of this appeal. Accordingly, the judgment of the trial court is affirmed.