Nathan HALSEY and Bonamour Pacific, Inc., Appellant

v.

Pam J. HALTER, Appellee

No. 05–14–01603–CV

Court of Appeals of Texas, Dallas.

Opinion Filed March 14, 2016

Zachary T. Mayer, Sara J. Krumholz, Dallas, TX, for appellants.

Dennis L. Roossien Jr., Andrew B. Sommerman, Dallas, TX, for appellees.

Before Justices Fillmore, Myers, and Whitehill

## MEMORANDUM OPINION

Opinion by Justice Whitehill

This case involves the sufficiency of the evidence to support an attorney's fees award in a breach of contract case where there was written evidence regarding a portion of the subject services and oral evidence regarding a portion of the services.

Following a bench trial, the trial court awarded Pam Halter (Halter) $85,000 for damages and $28,333 for attorney's fees against Nathan Halsey and Bonamour Pacific, Inc. (together, Halsey). In a single issue, Halsey challenges the legal and factual sufficiency of the evidence to support the fee award. For the reasons discussed below, we reject Halsey's issue, and affirm the trial court's judgment, because written timesheets were not required and there was factually sufficient evidence supporting the trial court's finding regarding the fee amount awarded.

## I. Background

Halter filed a shareholder derivative suit against Halsey for breach of fiduciary duty and unjust enrichment regarding a stock purchase agreement. Two law firms— Munsch Hardt Kopf & Harr, P.C., (MH) and Sommerman & Quesada, L.L.P. (SQ) represented her in that suit. Both firms worked on a one-third contingency fee basis.

The parties reached a settlement agreement on June 2, 2014 (the Agreement). The Agreement required Halsey to pay Halter $85,000 by June 9, 2014. Halsey, however, breached the Agreement.

Halter then amended her petition to add claims for breach of contract, promissory estoppel, and attorney's fees under TEX. CIV. PRAC. & REM.CODE ANN. § 38.0001 regarding the settlement agreement breach. The amended petition nonetheless still included the prior shareholder derivative claims.

The case was set for trial on August 27, 2014. Despite the new breach of settlement agreement claims, her lawyers continued incurring fees related to trying the underlying derivative suit claims.

On the eve of trial, Halsey agreed to the entry of a judgment thirty days after trial for $85,000 and $28,333 in attorney's fees. The parties presented the agreed judgment to the court on the morning of trial, but the court rejected it. As a result, that same day, the parties tried to the court only the breach of settlement agreement and attorney's fees issues.

Halter testified about the Agreement and its breach. And Andy Sommerman, an SQ lawyer, testified about Halter's § 38.001 attorney's fees. His testimony discussed the factors described in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex.1997) as applied to the present case. MH time records were admitted into evidence, and Sommerman testified that the amount of time MH spent is equivalent to the time spent by his firm.

On September 29, 2014, the trial judge signed a final judgment awarding Halter $85,000 in damages and $28,333 in attorney's fees. The judgment recited that the court considered the *Arthur Andersen* factors and determined that the attorney's fees were a reasonable and necessary amount for pursuing the breach of settlement agreement to judgment.

In a single issue, but with multiple arguments, Halsey challenges the legal and factual sufficiency of the evidence to support the fee award.

## II. Analysis

### A. Standard of Review

We review the trial court's decision to grant or deny attorney's fees for an

abuse of discretion. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex.2004); *Spector Gadon & Rosen, P.C. v. Sw. Sec., Inc.*, 372 S.W.3d 244, 251 (Tex. App.—Dallas 2012, no pet.) ("The fixing of a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion."). Legal and factual sufficiency of the evidence are not independent grounds under this standard of review, but are relevant factors we may consider in assessing whether the trial court abused its discretion. *Id.*

**B. Is the evidence legally and factually sufficient to support the fee award, where the evidence of work done was partly written and partly oral?**

Although Halsey asserts that the trial court abused its discretion in awarding fees because the evidence is legally insufficient to support the award, the body of his argument and his prayer also challenge the factual sufficiency of the evidence supporting the award. We therefore consider both challenges.

**1. Does § 38.001 require written evidence?**

■ We begin with the legal sufficiency of the evidence and Halsey's argument that the fees were not supported by adequate documentation. Halsey relies on *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex.2012) and its progeny to argue that attorney's fees awards must be supported by some evidence of the actual work performed. Halsey suggests that this evidence is lacking here because Sommerman did not submit his billing records or give detailed testimony about the hours ex-pended on each task or the attorney who performed the work. Although Halsey acknowledges that *El Apple* involved the calculation of fees under the lodestar method, he urges that *El Apple* is or should apply equally here although the fees in the present case were awarded under § 38.001. We disagree with Halsey.

■ *El Apple* was an employment discrimination and retaliation case brought under the Texas Commission on Human Rights Act. *Id.* at 760. In that case, the Court observed that Texas courts have used the lodestar method in awarding fees under the TCHRA because federal courts use the lodestar method in awarding fees under Title VII cases. *Id.*[1]

■ Under the lodestar method, a claimant must produce evidence of who performed the legal services, when the services were performed, and the amount of time spent on various parts of the case. *Id.* at 763. The Court distinguished the lodestar method from a traditional attorney's fees award by stating, "[w]hile Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach." *Id.* at 762.

In a subsequent opinion, however, the Court clarified that, even under the lodestar approach, *El Apple* does not hold that time records or billing statements are the only method of proof. *See City of Laredo v. Montano*, 414 S.W.3d 731, 735–37 (Tex. 2013).

We also recognize that *El Apple* does not require the admission of hourly time records in all cases, nor does it provide

---

1. Under the lodestar method, the court determines the "reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id.* at 760. Then, the court multiplies the number of hours by the applicable rate, yielding the lodestar. *Id.* The court then adjusts the lodestar up or down based on the *Arthur Andersen* factors. *Id.*

that all attorney's fees recoveries in Texas are governed by the lodestar method. *See Metroplex Mailing Servs. LLC v. Donnelly & Sons Co.,* 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no. pet.).

Here, Halsey does not assert, and the record does not show, that the lodestar method was required or that Halter "chose to prove up attorney's fees using this method." *See El Apple,* 370 S.W.3d at 736; *see also Long v. Griffin,* 442 S.W.3d 253, 253 (Tex.2014) (per curium) (referring to party "choosing" the lodestar method of proving attorney's fees). We therefore conclude that the lack of billing records or other documentation concerning Sommerman's attorney's fees does not render the evidence legally insufficient to support the fee award in this case.

**2. ,Was the evidence factually sufficient to support the award based on the breach of contract claim tied to the June 2nd breach where the testimony in part included evidence of non-recoverable fees?**

█ Likewise, as discussed below, we conclude that the evidence is factually sufficient to support the award because a reasonable person could find that the trial court adjusted the total fees to account for the non-recoverable fees and time periods.

Halsey complains that the $85,000 already included fees for the underlying shareholder claims, so fees incurred before the June 9th Agreement breach should not have been included in the award. He also asserts that the testimony on the *Arthur Andersen* factors was not sufficient to support the award. We disagree.

█ First, the *Arthur Andersen* factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997).

Sommerman testified about those factors that are relevant to this case. He said that both law firms were working on a one-third contingency fee basis. He also said that taking this type of case on a contingency basis is unusual, but not unheard of in Dallas. However, based on the amount of time the case was likely to take and the foreseeable problems with collecting anything from Halsey, "both firms took a huge risk."

Sommerman further explained that when the Agreement was breached in June, the attorneys still had to prepare to try all of the claims in the First Amended Petition, "depending upon the court's wishes." These claims included the breach of contract claim as well as the securities claims.

He continued that, after the breach, the attorneys investigated the cause of the breach and learned that a number of judgments had been entered against Halsey. This required that they speak to the other lawyers associated with these matters. The lawyers also continued negotiations with Halsey, and ultimately requested that the court return the case to the trial docket. They then began to prepare for trial.

Also according to Sommerman, trial preparation included preparing the direct examinations of witnesses, including expert witnesses. Counsel also had to prepare to explain to a jury the "proper handling of fiduciaries in a public company" and to establish what Halsey did with his 25 million shares of stock. This required review of a number of SEC filings to determine what happened to the stock and how it diluted the plaintiff's shares. There was also a strategy decision to make— whether to force Halsey into bankruptcy or pursue a judgment. Sommerman was also involved in preparing other pretrial matters, and this preparatory activity required "a significant amount of work."

Although MH time records were admitted into evidence, Sommerman said that he does not keep time records and that the amount of time MH spent is equivalent to the time his firm spent. He added that Halter is a long-standing client and there were time constraints in the case due to "trial settings and the like coming up ... pretty darn quick."

In terms of experience, Sommerman said that he has been licensed to practice law in Texas since 1986, and has experience with securities cases. In addition, he said that Roossien, Halsey's MH counsel, acts as an SEC receiver, has practiced law for over twenty years, and is regarded as "the leading expert in the city ... associated with SEC work and specifically securities work." Sommerman added that securities law is a unique matter that "requires quite a bit of study," and the breach of contract was novel in that he had never seen anybody "bust" a settlement agreement like this.

According to Sommerman, taking this case required SQ and MH to forego other litigation opportunities. He also said that Roossien's hourly rate of $400 per hour is reflected in the MH invoices, and that this is "slightly low" for the fee customarily charged in Dallas for similar services. If he charged by the hour, he would charge more.

Although associates assisted with some aspects of the case, Sommerman said that he and Roossien "were the heavy lifters ... because it's so complex you need older gentlemen like us to do the work."

Both firms continued to work on the case until August 20th. The MH invoice reflected 38.2 hours for work performed from June 10 through August 20 and $15,280 in corresponding attorney's fees. Sommerman added that his firm spent an equivalent amount of time on the case.

The MH invoices also showed work that was performed in connection with a previous trial setting, and Sommerman testified that the work performed then was representative of the amount of time and work that was expended from August 20 to the August 24 trial.

The shareholder suit concerned $330,000 in dispute, and Sommerman opined that an $85,000 settlement was a good result in that case if it could be collected. He added that calculating the hourly rate would exceed the amount that they were asking the court to award as a one-third contingent fee. He also said that $28,333.33, one-third of the settlement amount, would be a reasonable and customary fee for a breach of contract case such as this.

■ Courts are not required to receive evidence on each *Arthur Andersen* factor before awarding attorney's fees. *Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex. App.—Dallas 2008, pet. denied); *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.). But here, Sommerman offered some testimony on all of the *Arthur Andersen* factors. This testimony was sufficient to support the award. *See Woodhaven Partners, Ltd. v.*

*Shamoun & Norman, LLP,* 422 S.W.3d 821, 846 (Tex.App.—Dallas 2014, no pet.).

We are also not persuaded by Halsey's suggestion that fees incurred before the breach were necessarily included in the judgment. Sommerman made clear that his testimony about the work performed was for the time period following the June 9 breach through August 20. When the records of the time spent by MH were admitted into evidence, Roossien, told the court that the lawyers were "not seeking fees beyond the fees for the breach and enforcement of the settlement agreement." Moreover, the court's judgment expressly states that the fees are awarded in connection with the breach of the Agreement.

Halsey also contends that the fees are excessive because the breach of contract issue was relatively straightforward, only three months elapsed between the time of the breach and trial, and there was no discovery during that time. He also claims that the work performed was primarily related to the fiduciary duty claims rather than the breach of contract issue that was actually tried.

The MH invoice for work performed from June through August showed total fees of $15,280. And Sommerman testified that his firm spent an equal amount of time on the case. Thus, there was evidence that the total amount of fees incurred during the applicable time period were $30,560. The trial court, however, did not award that amount.

Instead, the court adjusted the total amount of fees down to $28,333. In so doing, the court expressly stated that it considered the *Arthur Andersen* factors and the contingent fee agreement. Therefore, even though there was evidence that the total amount of fees testified to included work on the fiduciary duty claims, the total amount of fees awarded was reduced in the final award. Furthermore, the *Arthur Andersen* factors include considering the contingent fee nature of the representation. *See Arthur Andersen & Co.,* 945 S.W.2d at 818.[2] The trial court thus awarded a fee amount based on the proper legal standards and the evidence.

Because the evidence is legally and factually sufficient to support the attorneys' fees award, the trial court did not abuse its discretion in making the award. Accordingly, we resolve Halsey's issue against him and affirm the trial court's judgment.

---

2. Although Halsey generally asserts that the time spent by paralegals and secretaries was not segregated, he does not argue that there was a failure to segregate the breach of contract claims from the breach of fiduciary duty claims. He also does not argue that fees were awarded on claims for which fees are not recoverable (i.e. breach of fiduciary duty).