

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00124-CV

IN THE INTEREST OF L.A.M. AND L.R.M., CHILDREN

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 73,240-C, Honorable Ana Estevez, Presiding

May 24, 2022

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ

Appellant, Courtney Marchbanks, appeals from the trial court's final judgment entered in the underlying suit for modification of the parent-child relationship of two minor children. After a jury trial and six months of post-verdict hearings, the trial court appointed appellee, Chad LaStewart Marchbanks, as sole managing conservator of the children, aged eight and five, and appointed Courtney as possessory conservator. The trial court awarded Courtney standard possession, with customary elections. We affirm the trial court's judgment in part and reverse and remand in part.

## Background

Courtney and Chad finalized their divorce in July 2018.[1]  Pursuant to their *Decree of Divorce,* the two were named joint managing conservators of their two children.  In November of 2018, Courtney contacted Texas Child Protective Services ("CPS") and alleged that Chad was physically and emotionally abusing their two boys, L.A.M. and L.R.M.[2]  CPS investigated the allegations and ruled them out.  The investigator testified that Courtney stated that she understood there was no abuse or neglect, but that she had concerns about Chad being alone with the children.  In December of 2018, Courtney took the children to a counselor, stating that she had concerns about abuse and discipline.  The counselor advised her to report any concerns of abuse to CPS.  Courtney did not return the boys to the counselor.

In February of 2019, Courtney took L.A.M. to a new counselor.  Courtney sent the counselor an email stating that she may have to speak on the children's behalf in court.  The following day, Courtney texted a friend and requested recommendations for a child custody lawyer.  Later that night, when Courtney wiped L.A.M.'s bottom with a baby wipe, L.A.M. complained that it was burning.  Courtney then noticed redness around L.A.M.'s anal area.  Courtney began questioning L.A.M. about whether he had been touched inappropriately, which L.A.M. denied.  However, after several minutes of being questioned

---

[1] The record indicates the parties entered into a mediated settlement agreement in July 2018.  The *Decree of Divorce* was entered in August 2018.

[2] To protect the privacy of the minor children involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d).

and videotaped by Courtney, the child eventually answered "yes" when Courtney asked if Chad had touched his "business."[3]

Courtney then called her uncle, who worked for the Randall County Sheriff's Department. A deputy visited the home that night. Courtney told him she believed her children were being abused and that she was "terrified" of Chad.[4] The sheriff's department turned the investigation over to the Amarillo Police Department. The investigating detective arranged for L.A.M. to be interviewed at the Bridge, a child advocacy center in Amarillo. Courtney took L.A.M. the next day, but L.A.M. did not make an outcry statement in his interview. Staff at the Bridge gave Courtney a pamphlet about child abuse, which Courtney took home and began reading to the children.

On February 20, Courtney took L.A.M. to Northwest Texas Hospital to be examined by a sexual assault nurse examiner (SANE). Neither CPS nor law enforcement had directed Courtney to have a sexual assault examination conducted on L.A.M. The nurse concluded that the redness and irritation L.A.M. complained of was due to a hygiene issue. However, L.A.M. stated that his father had "touched his business," and he was referred to the Bridge for another interview. L.R.M. was also interviewed at the Bridge. In the course of these interviews, both children made outcry statements of abuse committed by their father.[5] Chad denied all allegations of abuse. Neither the investigation

---

[3] Testimony indicated that L.A.M. referred to his genital area as his "business."

[4] Although there were no allegations of domestic violence or abuse made during the divorce proceedings, Courtney began identifying herself as a "domestic violence survivor" in the fall of 2018.

[5] L.R.M. was later given a SANE exam.

3

by CPS nor the investigation by the Amarillo Police Department resulted in any action against Chad.

Beginning in March, Courtney refused to allow Chad to exercise his visitation periods. On April 30, Chad filed a lawsuit against Courtney seeking to be appointed sole managing conservator of the boys and asking that Courtney's visits be supervised. He also filed a motion to enforce his right of access to the children. Courtney filed a countersuit, requesting that she be appointed sole managing conservator and asking that Chad's visits be supervised. After several hearings, the parties entered into an agreed temporary order providing that Chad's visits with the boys be continuously supervised by a licensed professional counselor. Counselors who supervised the visits noted that the children were initially relaxed and interactive with Chad; however, in later visits the boys showed hesitancy in separating from their maternal grandparents, who brought them to the visits, and declined to participate. Following a court order, the boys began attending visits again. Chad eventually underwent a psychosexual examination by Troy Timmons, a Licensed Professional Counselor and Licensed Sexual Offender Treatment Provider. That examination concluded Chad "showed no sexual interest in preschool or school-age children. He had a normal mental status examination and a normal personality."

In September of 2020, the case was tried before a jury in a six-day trial. During the trial, Courtney sought to introduce testimony from Chad's adult son regarding alleged acts of abuse against him, but the trial court excluded the evidence. At the close of testimony, Courtney moved for an instructed verdict, which the trial court denied. The jury was asked which party should be appointed sole managing conservator of the

4

children; the answer was "Chad LaStewart Marchbanks."[6]  On March 10, 2021, the trial court electronically signed the *Order Modifying Parent-Child Relationship*, appointing Chad as sole managing conservator, appointing Courtney as possessory conservator, and awarding Courtney a standard possession order with elections.  Courtney filed a motion for mistrial and a motion for new trial.  These motions were denied.  The trial court subsequently issued *Findings of Fact and Conclusions of Law*.  Courtney timely filed this appeal.

## Application and Analysis

Courtney challenges the trial court's judgment through six[7] issues, as follows:

1.  Courtney should have been appointed the children's sole managing conservator as a matter of law, and the trial court erred in denying her motions for directed verdict and new trial.

2.  The evidence was factually and legally insufficient to fail to name Courtney as sole managing conservator, and the trial court erred in denying Courtney's motions for directed verdict and new trial.

3.  Brandon Morgan should have been permitted to testify, and the trial court erred in denying Courtney's motion for new trial.

4.  Dr. Seigel should not have been permitted to testify, and the trial court erred in denying Courtney's motion for new trial.

5.  The evidence was factually and legally insufficient to support the court's award of attorney's fees, and the trial court erred in denying Courtney's motion for new trial.

6.  A person disqualified from jury service sat on this jury, and the trial court erred in denying Courtney's motions for mistrial and new trial.

---

[6] The verdict was signed by ten of the twelve jurors.

[7] The eight "Issues Presented" identified in Courtney's table of contents do not precisely correspond with the six numbered issues raised in the body of her brief.  We will address the issues as briefed.

**Issue One: Appointment of Conservator as a Matter of Law**

By her first issue, Courtney asserts that the trial court erred in denying her motions for directed verdict and new trial because she should have been appointed as the children's sole managing conservator "as a matter of law." Courtney bases this argument on the deposition testimony of Brandon Morgan, Chad's adult son, alleging abuse by Chad some fifteen years earlier. Courtney claims that Brandon's testimony constituted "undisputed evidence" that Chad committed child abuse in the past, thus establishing a rebuttable presumption under section 153.004(b) of the Texas Family Code that the appointment of Chad as the sole managing conservator of the children is not in their best interest. *See* TEX. FAM. CODE ANN. § 153.004(b). This testimony, Courtney argues, was "before the trial court after the verdict but before the judgment was signed," as Brandon's deposition was admitted into evidence in a post-verdict hearing on December 17, 2020.[8]

We first address the trial court's denial of Courtney's motion for directed verdict. Before resting, Courtney's counsel moved for a directed verdict, arguing that Chad "failed to show that it would be in the best interest of the children" to modify the custody order. Notably, Courtney's motion made no reference to any presumption arising under section 153.004(b); thus, she arguably failed to preserve this argument. *See* TEX. R. CIV. P. 268 (motion must specifically state what grounds merit directed verdict). But even if we assume her motion could be construed as a motion for a directed verdict based on application of section 153.004(b) of the Family Code, we overrule this issue. Courtney's argument is premised on Brandon's deposition testimony, which was admitted into

_____

[8] Although Brandon did not testify at trial, Courtney made an offer of proof as to what his excluded testimony would have been. She addresses the exclusion of this evidence in a separate issue.

6

evidence in a post-verdict hearing on December 17, 2020, roughly three months after the trial court received the jury's verdict.[9] Not only was Brandon's testimony never before the jury, but Courtney's motion was not re-urged after admission of the testimony on which she relies. Consequently, we conclude that Courtney has waived this complaint. *See, e.g., 1986 Dodge 150 Pickup Vin No. 1B7FD14T1GS006316 v. State*, 129 S.W.3d 180, 183 (Tex. App.—Texarkana 2004, no pet.) ("If a party proceeds to present evidence after that party has moved for a directed verdict, such party must re[-]urge the motion for directed verdict at the close of the case, or any error in its denial is waived."); *see also Elliott v. Lewis*, No. 05-91-01216-CV, 1994 Tex. App. LEXIS 3338, at *21 (Tex. App.—Dallas Dec. 16, 1994, no pet.).

We now turn to the issue of whether the trial court erred in denying Courtney's motion for new trial based on Brandon's deposition testimony regarding abuse.[10] We review a trial court's refusal to grant a motion for new trial under an abuse of discretion standard. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner without reference to any guiding rules and principles. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam).

Section 153.004(b) provides, "It is a rebuttable presumption that the appointment of a parent as the sole managing conservator of a child . . . is not in the best interest of the child if credible evidence is presented of a history or pattern of past or present child

---

[9] Courtney's motion for directed verdict was made during trial, on September 18, 2020; the parties closed and the jury returned its verdict on September 21, 2020.

[10] Although Courtney presents this issue as error in the denial of a new trial, she requests that this Court reverse and render judgment appointing her as sole managing conservator.

neglect, or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child." TEX. FAM. CODE ANN. § 153.004(b). Even if the evidence triggers this presumption, the factfinder may find that other evidence rebuts it.

Chad contends that section 153.004(b) of the Family Code, on which Courtney's argument depends, is inapplicable in a modification suit brought under chapter 156 of the Family Code. We recognize that some of our sister courts, noting the distinct statutory schemes found in Family Code chapters 153 and 156, have held that section 153.004 does not pertain to modification proceedings. *See In re S.E.K.*, 294 S.W.3d 926, 928-29 (Tex. App.—Dallas 2009, pet. denied); *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.). Our disposition of this appeal does not require our determination of that issue.

Again, Courtney's argument regarding section 153.004(b) depends on our consideration of evidence presented at a post-verdict hearing addressing issues related to enforcement, possession, and child support, months after the jury's verdict on conservatorship had been received. However, Courtney provides no authority for her request, and we see no basis for considering evidence other than that presented at trial. Courtney did not move to reopen the evidence and, at any rate, Rule 270 of the Texas Rules of Civil Procedure provides that "in a jury case[,] no evidence on a controversial matter shall be received after the verdict of the jury." *See* TEX. R. CIV. P. 270. The jury's verdict on conservatorship was necessarily based on the evidence that had been presented to it; it could not be based on information provided after the fact in a hearing

8

on different issues.  Here, Brandon's testimony was never before the jury.  There was no need for Chad to put on rebuttal evidence as there was no presumption to rebut.[11]

Accordingly, we find no abuse of discretion in the trial court's denial of Courtney's motion for directed verdict and motion for new trial.  We overrule Courtney's first issue.

## Issue Two:  Sufficiency of the Evidence

In her second issue, Courtney asserts that the evidence was factually and legally insufficient to fail to name her as sole managing conservator, and the trial court erred in denying her motions for directed verdict and new trial.  We review Courtney's challenge to the sufficiency of the evidence, as asserted in both her motion for new trial and directed verdict, under the same standard.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 822-23 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgment, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review"); *see also Austin Bridge & Rd., LP v. Suarez*, 556 S.W.3d 363, 376 (Tex. App.— Houston [1st Dist.] 2018, pet. denied) (where trial court's denial of directed verdict is based on the evidence, standard of review is legal sufficiency or "no evidence" standard).

In a legal sufficiency review, we consider the evidence in a light most favorable to the jury's findings, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *City of Keller*, 168 S.W.2d at 827.  "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony."  *Id.* at 819.  Because jurors "may choose to believe one

---

[11] We disagree with Courtney's characterization of Brandon's testimony as "undisputed" when it was introduced post-verdict, when Chad had no reason to challenge it.

9

witness and disbelieve another," we may not substitute our judgment for that of the factfinder. *Id.*

In reviewing the factual sufficiency of the evidence, we "must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Factual sufficiency reviews require that we review both the evidence that supports and the evidence that contradicts the jury's verdict in a neutral light. *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Considering the policies at issue and the nature of child custody disputes, appellate courts accord "unique deference" to a factfinder's custody determination. *In re R.T.K.,* 324 S.W.3d 896, 901 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Great deference is afforded the factfinder in light of the "forces, powers, and influences that cannot be discerned by merely reading the record." *Id.* (quoting *In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.)). It is the province of the jury to resolve conflicts in the testimony, and the jury is privileged to believe all, some, or none of the testimony of any particular witness and to draw its conclusions therefrom. *Pendley v. Fite*, 602 S.W.2d 560, 565 (Tex. App.—Amarillo 1980, no writ).

On appeal, Courtney highlights the evidence casting her in a positive light, such as her strong bond with the children and the commendable care she has provided them. She has attended to their educational and physical needs and provided them a safe home with her in her parents' household. However, the jury also heard evidence that Courtney

deliberately and detrimentally interfered with Chad's access to, possession of, and relationship with the children, even before any allegations of abuse were made. There was evidence indicating that Courtney engaged in conduct that caused anxiety and confusion for the children and that she was not supportive of their relationship with Chad. On the other hand, Chad presented evidence that the children were safe and comfortable in his home, that he desired for the children to have a positive relationship with both parents, and that he was compliant with investigators and with the trial court's orders. Claims of alleged abuse by Chad had been ruled out or deemed "unable to determine" by CPS and law enforcement. There was evidence suggesting that the boys' outcries were the result of Courtney's coaching and that their claimed fear of Chad was due to her influence.[12] Finally, Courtney herself testified that the children's behavior was "increasingly worse" at the time of trial, even though they had been under her primary care for months, with Chad having only supervised visitation.

Considering all of the evidence, reasonable and fair-minded people could find that it was in the children's best interest to appoint Chad as the sole managing conservator. *See In re J.F.-G.*, 627 S.W.3d 304, 311-12 (Tex. 2021) (appellate courts should defer to factfinder's determinations regarding witness credibility). We conclude that the evidence was legally and factually sufficient to support the jury's verdict. Therefore, the trial court did not abuse its discretion in denying Courtney's motion for directed verdict or motion for new trial. We overrule Courtney's second issue.

---

[12] For example, L.A.M. told his counselor that Chad was "a bad guy." When asked how he knew his father was a bad guy, L.A.M. responded, "Mommy told me, and I don't really know how."

11

**Issue Three:  Exclusion of Evidence**

In her third issue, Courtney claims that Chad's adult son, Brandon, should have been permitted to testify at trial.  Courtney contends that Brandon's testimony "proves" that Chad committed child abuse in the past and was thus relevant and admissible to the question of who should be appointed as the children's sole managing conservator.  On the other hand, Chad's counsel argued that the evidence was stale evidence, barred by res judicata, and not relevant to the inquiry being submitted to the jury.

Before Courtney called Brandon to testify, the jury heard testimony from other witnesses regarding Brandon's relationship with Chad.  Dr. Jeffrey Siegel, who was appointed by the trial court to conduct a child custody evaluation in the case, testified that Chad's visitation with Brandon was supervised and that Chad's parental rights to Brandon had been voluntarily terminated.  He further testified that he was aware of Brandon's allegations of physical and emotional abuse by Chad.  Dr. Siegel stated that, if such allegations were made by a minor, he would be obligated to report them.  He further testified that knowing of Brandon's allegations did not change his opinion that Chad should be the sole managing conservator of the children.  Courtney testified that she was unaware of Brandon's allegations against Chad at the time of her settlement agreement with Chad in July of 2018.  Finally, Chad testified that his parental rights to Brandon were terminated.   When Courtney's counsel began questioning Chad about Brandon's allegations against him, the trial court cautioned, "I am going to let you ask about allegations and nothing else."  Chad's counsel objected to the question of whether Chad considered those to be physical and/or emotional abuse.  Courtney's counsel then ended that line of questioning, stating, "I will move on, Your Honor.  I don't want to mess up."

12

Courtney's counsel subsequently called Brandon to testify. The trial court noted that there was no impeachment reason to call him, because testimony that Brandon alleged physical and emotional abuse by Chad was already in evidence. Courtney's counsel then made an offer of proof in which Brandon testified to a number of bad acts by Chad, indicating physical and emotional abuse. The trial court sustained Chad's objections.

The standard of review an appellate court applies to a trial court's decision to permit or exclude the admission of evidence is an abuse of discretion standard. *In re A.W.B.*, 419 S.W.3d 351, 356 (Tex. App.—Amarillo 2010, no pet.). We must uphold the trial court's decision so long as it falls within the zone of reasonable disagreement. *Id.*

Here, we find no abuse of discretion in the trial court's decision to exclude the evidence. First, Courtney cites no cases supporting her argument that the trial court's ruling was erroneous. Additionally, we note that the jury had already heard evidence that Brandon alleged conduct by Chad that constituted physical and emotional abuse. The acts claimed in Brandon's offer of proof were remote in time, alleged to have occurred at least fifteen years ago. Moreover, the acts were markedly different from the acts of sexual abuse alleged in the instant case, thus not indicative of a continuing course of conduct by Chad. Finally, we reiterate that Texas law is well settled that evidence of misconduct that occurred before rendition of the order sought to be modified is inadmissible in a subsequent proceeding. *In re W.R.M.D.*, No. 10-07-00046-CV, 2007 Tex. App. LEXIS 8238, at *2 (Tex. App.—Waco Oct. 17, 2007, no pet.) (mem. op.) (and cases cited therein); *see also Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969). For the foregoing reasons, the trial court did not abuse its discretion in excluding Brandon's

13

testimony when it was offered to corroborate Courtney's claims.  Accordingly, we overrule Courtney's third issue.

**Issue Four:  Admission of Evidence**

In her fourth issue, Courtney contends that Dr. Seigel should not have been permitted to testify, and the trial court erred in denying her motion for new trial.  Courtney asserts that Dr. Seigel failed to timely produce his custody evaluation and Chad failed to timely designate him as an expert witness.

The record reveals that Dr. Seigel was an expert selected by Courtney and appointed by the trial court in December of 2019 to provide a child custody evaluation. The court's order outlined the issues Dr. Seigel was to address and contemplated his testifying at trial.  His report was due in March of 2020 but not produced until shortly before trial, on September 12, 2020.  The record indicates that Chad appointed Dr. Seigel as an expert in mid-August, roughly three months after the deadline for designation of expert witnesses.  The trial court excluded Dr. Seigel's report from evidence due to its untimely production, but allowed him to testify over Courtney's objection.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001) (Baker, J., dissenting).  We will uphold the trial court's evidentiary ruling if there is any legitimate basis for it.  *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

This is not a case in which a party called a surprise witness such that the opposing party could legitimately claim unfair surprise or prejudice.  Rather, Courtney had actual

14

notice of Dr. Seigel's appointment by the trial court and had the necessary access and opportunity to depose him to discover his opinions. *See, e.g., In re Wilson*, No. 07-03-00125-CV, 2004 Tex. App. LEXIS 3807, at *11-13 (Tex. App.—Amarillo Apr. 29, 2004, no pet.) (mem. op.) (trial court did not abuse discretion by admitting testimony from court-appointed expert, even though mother had not designated expert in response to request for disclosure). Although Courtney asserts that Chad's late designation of Dr. Seigel as an expert severely prejudiced her, she does not explain how. Moreover, the rules allow a party to seek a continuance if any new information disclosed requires it. TEX. R. CIV. P. 193.6(c). Courtney never did so. Under these circumstances, we conclude that the trial court did not abuse its discretion in allowing Dr. Seigel to testify. We overrule Courtney's fourth issue.[13]

**Issue Five: Attorney's Fees**

After the jury trial, the issue of attorney's fees was submitted to the trial court for decision. By her fifth issue, Courtney challenges the trial court's award of attorney's fees. In the final order, the trial court awarded Chad $65,000 for attorney's fees and made a conditional award of an additional $52,000 for attorney's fees through the appellate process. We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Evidentiary sufficiency issues are not independent grounds to reverse a trial court's award of attorney's fees but are relevant factors in assessing whether the trial court abused its discretion. *Nathan Halsey*

---

[13] Courtney also states, in passing, that the trial court further erred in refusing to allow her to fully cross-examine Dr. Seigel. Passing assertions unsupported by authority or argument are deemed inadequately briefed and present nothing for our review. TEX. R. APP. P. 38.1(h); *Jackson Walker, LLP v. Kinsel*, 518 S.W.3d 1, 20 (Tex. App.—Amarillo 2015), aff'd by 526 S.W.3d 411 (Tex. 2017) (op. on reh'g).

*& Bonamour Pac., Inc. v. Halter*, 486 S.W.3d 184, 186-87 (Tex. App.—Dallas 2016, no pet.) (mem. op.). A trial court has broad discretion to award attorney's fees in a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 106.002(a).

At the hearing on attorney's fees, Chad requested a total of $137,188.92, which included $125,093.91 in attorney's fees and $12,095.01 in expenses. Chad introduced his itemized billing statements and a summary of fees and expenses, and his attorney testified as to her hourly rate and the work she performed. She testified that the bills were only for enforcement and modification, not for the tort claims.[14] She explained that her work on some issues was apportioned, such that part was assigned to the modification matter and some to the tort matter. She further testified that the enforcement action and the modification action were intertwined, stating, "These enforcements and these modifications are so intertwined with one another, that the case law says I am not required to segregate those out. I did it in an effort to break down everything for the Court; but I don't think I am required to because they are so intertwined."[15] Finally, she testified that there was "about $60,000 worth" of work that was done but not billed to the client.

On appeal, Courtney lodges four main complaints against the attorney's fees award: the fees for Chad's three separate legal matters were not properly segregated, there was no evidence of the reasonableness and necessity of paralegal fees, the trial

---

[14] Chad pursued (1) an enforcement action, (2) a modification action, and (3) a tort claim, which was severed from the other claims before trial.

[15] For example, Chad's counsel testified that information regarding missed visitations went to modification and also to enforcement.

16

court improperly awarded expert witness fees, and the trial court improperly awarded additional attorney's fees in the event of an appeal.

Courtney asserts that "the trial court awarded fees for paralegal work" and "[t]he trial court awarded fees that [Chad] incurred for expert witnesses, which was improper." She requests that this Court reverse and render judgment eliminating paralegal fees in the amount of $17,770 and expert fees in the amount of $17,202.50. However, the record does not indicate that any portion of the fee award was for paralegal fees or expert fees. Although Chad introduced evidence related to paralegal fees and expert witness fees, the trial court's order does not specify that any of the $65,000 it awarded was attributable to paralegal work or expert witnesses. Because the record does not reflect that the trial court awarded fees for paralegal work or for expert witnesses, a reasonable person could conclude that the trial court adjusted the total fees awarded to account for any non-recoverable fees. *See, e.g., Halter*, 486 S.W.3d at 190.

As for Courtney's claim regarding failure to segregate, Chad's counsel testified that fees for the tort claim were not reflected in her billing for this case and that she made an effort to segregate the fees for the modification and enforcement action, but those claims were closely intertwined. The trial court may have determined that the modification action and the enforcement action were intertwined such that Chad was not required to segregate his attorney's fees for those claims. Further, the itemized invoices and attorney's testimony concerning the fees charged, work performed, and time expended on different claims are some evidence in support of the trial court's award. Even if we assume that the fees for modification and enforcement were required to be segregated, the claimed fees of $137,188.92 were significantly adjusted by the trial court, to $65,000.

17

We therefore conclude that the trial court's award of attorney's fees in the amount of $65,000 was not an abuse of its discretion. *See Guimaraes v. Brann*, 562 S.W.3d 521, 551 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (trial courts have broad discretion to award reasonable attorney's fees; reasonableness of attorney's fees is question of fact).

We next consider the award for additional attorney's fees on appeal. Courtney contends that the testimony was wholly lacking regarding the services necessary for appeal and a reasonable hourly rate therefor. *See Yowell v. Granite Op. Co.*, 620 S.W.3d 335, 354 (Tex. 2020).

At the hearing on attorney's fees, Chad's counsel testified that she "anticipate[d] approximately seventy-five thousand in appellate attorney's fees," which she expected would be comprised of $50,000 to defend an appeal to this Court and $25,000 for further proceedings in the Supreme Court. The trial court subsequently awarded contingent appellate attorney's fees in the amounts of $30,000 for an appeal to this Court, $7,000 for response to a petition to the Supreme Court, and $15,000 for briefing and oral argument to the Supreme Court.

We recognize the indefinite nature of contingent appellate attorney's fees. *See id.* at 355 (explaining "[t]here is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise"). Nonetheless, as the Supreme Court has held, this uncertainty does not excuse a party from the need to "provide opinion testimony about the services it reasonably believes will

be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* Because no testimony was presented regarding these matters, we conclude the evidence is legally insufficient to support the trial court's award. Therefore, we reverse the award of contingent appellate attorney's fees and remand for redetermination of those fees. *See Jimmie Luecke Children P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 Tex. App. LEXIS 605, at *23-24 (Tex. App.—Austin Jan. 27, 2022, pet. filed) (mem. op.).

We overrule Courtney's fifth issue as to the $65,000 in attorney's fees awarded for trial, but sustain it as to the award of attorney's fees for the appeal. We remand to the trial court solely for a determination of appellate attorney's fees.

**Issue Six: Juror Issues**

Finally, Courtney raises questions concerning one of the jurors who signed the 10-2 jury verdict. Courtney contends that Juror M.S. was disqualified to serve on a jury and committed juror misconduct, that Courtney's constitutional right to a jury has been infringed, and that new evidence was discovered regarding Chad's friendship with M.S.

We first address Courtney's claim that M.S. was disqualified to serve as a juror because she has been convicted of a felony and is not of good moral character. The evidence presented by Courtney in her motion for new trial shows that an individual pleaded guilty to tampering with a government record in 1991.[16] The trial court entered an order deferring adjudication and placing her on probation for five years. Five years

---

[16] We note that the records attached in support of this argument identify an individual with the same first name, but not the same surname, as M.S. Although counsel has not directed us to evidence indicating that this is the same individual, our independent review of the record has revealed that M.S. testified at the hearing on Courtney's motion for mistrial that she had previously used that surname.

later, the court entered an order discharging her from probation and dismissing the cause. The order of dismissal noted that she was placed on probation "without a finding of guilt."

Courtney argues that because the guilty plea was not withdrawn, clemency was not granted, and the trial court did not "set aside the verdict or dismiss the accusations," it then follows that M.S. is a convicted felon who is disqualified from jury service. We disagree with Courtney's analysis.

Under the Texas Code of Criminal Procedure, a juror is absolutely disqualified from service if she (1) has been convicted of theft or any felony; (2) is under indictment or other legal accusation for theft or any felony; or (3) is insane. *See* TEX. CODE CRIM. PROC. ANN. art. 35.19. A juror who is on deferred adjudication is "under indictment." *Abrams v. State*, No. 14-95-01367-CR, 1997 Tex. App. LEXIS 6038, at *9 (Tex. App.—Houston [14th Dist.] Nov. 20, 1997, pet. ref'd). Once an individual is discharged from her community supervision, she is immediately eligible to serve on a jury. *Davis v. State*, 968 S.W.2d 368, 370 (Tex. Crim. App. 1998) (en banc); *Pace v. State*, No. 07-15-00095-CR, 2017 Tex. App. LEXIS 2317, at *10 (Tex. App.—Amarillo Mar. 16, 2017, no pet.) (mem. op.) (not designated for publication); *see also Donovan v. State*, 68 S.W.3d 633, 636 (Tex. Crim. App. 2002) (en banc) (under the deferred adjudication scheme, there is no finding of guilt and no conviction). Because Courtney did not establish that M.S. was a convicted felon or had been adjudicated of a crime impugning her moral character, we find no error in the trial court's decision to deny Courtney's motion for mistrial and motion for new trial on these grounds.

20

Courtney next alleges that M.S. committed juror misconduct. In connection with this claim, Courtney maintains that M.S. gave erroneous and incorrect answers on voir dire, concealing her bias toward Chad. The record reflects that M.S. knew Chad as an old high school friend. The two were Facebook "friends" and interacted on Facebook both before and after the trial. That information was not, however, disclosed during voir dire or at any point prior to the jury verdict.

First, Courtney claims that during voir dire, M.S. "denied knowing any party to the litigation." The record belies this claim. The record shows that when Chad's counsel asked, "Does anyone know Chad Marchbanks?" M.S. raised her hand. Counsel then followed up by asking, "You know Chad?" and M.S. nodded her head. Courtney argues that the COVID-19 precautions at trial, such as M.S. wearing a mask, interfered with her ability to discern M.S.'s raised hand and nodding head. However, Courtney has not directed us to any evidence establishing that her trial counsel did not see M.S.'s raised hand or nodding head. Nor has she directed us to any point in the record where she brought to the trial court's attention any issues with discerning prospective jurors' responses because of mask-wearing or other measures.

Courtney also faults M.S. for not speaking up when the trial court gave this instruction:

> I just need to know if anybody knows the parties or any of the lawyers that have been introduced in such a way that they could not set aside whatever relationship that was and base their verdict solely on the evidence. So if you have either a good relationship or a bad relationship, it doesn't matter. *If it is going to make a difference for this case*, I need to know that. So if anybody feels that way, please raise your hand now.

21

(Emphasis added.). Courtney asserts that M.S.'s inaction in response to this instruction was deceitful; however, Courtney's assertion is based on her assumption that M.S. could not set aside her relationship with Chad when evaluating the evidence. This instruction was not designed to uncover whether any member of the venire panel knew a party. Rather, it sought to determine whether any member of the panel was so familiar with a party that she could not be impartial. Thus, M.S.'s failure to respond does not indicate that she denied knowing Chad, but that she believed she could be fair despite knowing him.[17] This is not evidence that M.S. failed to answer truthfully or committed juror misconduct. Moreover, "[i]t is counsel's responsibility to ask questions specific enough to elicit the answers they require." *Webb v. State*, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007).

Finally, we take up the issue of M.S. and Chad's Facebook interactions. At the hearing on her motion for new trial, Courtney testified that after the trial, which ended on September 21, 2020, she viewed a "memory" on her own Facebook page dating from September 29, 2012, which was the day she and Chad were married. The memory was a Facebook post by Chad's aunt "tagging" Courtney and congratulating the couple on their wedding day.[18] When reviewing this memory, Courtney saw that M.S. had commented on the post, "Tell Chad congrats for me, I always loved him!! Such a precious guy!!" In response to the aunt's comment that Chad had "picked the best," M.S. replied,

---

[17] At the hearing on Courtney's motion for mistrial, M.S. explained that she understood the question to inquire into bias; she didn't speak up because, as she stated, "I knew that I could sit there and look at both sides and not be biased towards Mr. Marchbanks." The trial court confirmed this understanding of the question, stating, "Well, my question was whether [the relationship] causes bias . . . . So I don't believe that I can just assume that she lied, when people – People sit on trials all the time where they know the parties."

[18] Chad was not tagged in the post.

22

"That's great, he deserves the best!"  M.S. also "liked" a post by the aunt the following day, in which the aunt commented positively on the wedding and said, "LOVE YA GUYS and so very proud of you Chad in more ways than one!"  Courtney then discovered that Chad had accepted a Facebook friend request from M.S. on August 30, 2020.  Chad, M.S., and another friend had a short exchange reminiscing about growing up together.  M.S. commented, "Y'all were a bunch of great guys!  Now great men!"

In her appellate brief, Courtney contends she "asked in discovery for information about [Chad's] Facebook friends, and he produced that information months before trial.  [Chad] was under a continuing obligation to supplement his discovery responses, and he failed to supplement and include information that he and [M.S.] had become Facebook friends."  But Courtney does not support this statement by pointing this Court to any place in the record showing that she tendered such a request.  An appellate court is not required to search a voluminous record without guidance to determine whether assertions regarding the facts of the case are valid.  *See In re S.S.G.*, 153 S.W.3d 479, 485 (Tex. App.—Amarillo 2004, pet. denied); *see also Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.) (holding that appellate court "cannot say the trial court abused its discretion" in refusing to exclude documents not produced in discovery when record did not contain relevant discovery requests).

Even if we assume that such a discovery request was made and that Chad failed to properly supplement his response, we cannot conclude that the trial court abused its discretion in denying Courtney's requests for a mistrial and new trial on this basis.  When a responding party "fails to make, amend, or supplement a discovery response in a timely manner," the trial court is barred from admitting information that was not timely disclosed.

23

Tᴇx. R. Cɪᴠ. P. 193.6(a). However, such evidence is not excluded if the requesting party will not be unfairly surprised or prejudiced by admission of the evidence. *Id.*; *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (per curiam). Here, Courtney's own Facebook account revealed that M.S. knew Chad. More importantly, M.S. responded affirmatively in voir dire when asked whether she knew him. After M.S. made this disclosure, Courtney had the opportunity to question M.S. about the nature of their acquaintance and could have avoided any surprise or prejudice that could be attributable to M.S.'s status as Chad's Facebook friend.[19]

Bearing in mind that we review the trial court's decision to deny a mistrial and deny a new trial for an abuse of discretion, we conclude that the trial court did not abuse its discretion in this case. Therefore, we overrule Courtney's final issue.

## Conclusion

For the reasons set forth above, we reverse the judgment of the trial court as to the issue of appellate attorney's fees only, and remand for a redetermination of those fees. In all other respects, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Pirtle, J., concurring and dissenting.

---

[19] We further note that the trial court found that Courtney failed to show M.S.'s prior knowledge of Chad was material and failed to show that M.S.'s prior knowledge of Chad probably caused injury. These findings were not challenged by Courtney on appeal. The post-trial hearings revealed no evidence of any communication or other improper conduct between M.S. and Chad during the trial.

24